**United States District Court**
**For the Southern District of Mississippi**
**Western Division**

COURTNEY B. COLLINS

                                        PLAINTIFF

VERSUS                    CIVIL ACTION NO. 5:08-cv-203-DCB-JMR

MARSHALL FISHER, AS DIRECTOR
OF THE MISSISSIPPI BUREAU OF
NARCOTICS, AND KYLE REYNOLDS,
PHILLIP POPE, and WILLIE WATKINS,
AS AGENTS/EMPLOYEES OF THE
MISSISSIPPI BUREAU OF NARCOTICS

                                        DEFENDANTS

**OPINION & ORDER**

This cause is before the Court on the Defendants' Motion for Summary Judgment [docket entry no. 27], the Defendants' Motion to Dismiss [docket no. 29], the Plaintiff's Motion to Strike [docket entry no. 40]**,** the Defendants' oral objection to the Plaintiff's Submission of an Expert Affidavit with its Summary Judgment Papers, and the Plaintiff's Petition to Disclose a Grand Jury Matter [docket entry no. 46].  Having carefully considered the motions, responses thereto, the evidence presented during a hearing held by the Court, and the applicable law, the Court finds and orders as follows:

**I.  FACTS**

Plaintiff Courtney Collins was arrested in Yazoo City, Mississippi on April 24, 2007, and charged with two counts of the

sale of crack cocaine under Mississippi state law.  Collins was arrested based on the investigation of Mississippi Bureau of Narcotics ("MBN") agents Willie Watkins, Kyle Reynolds, and Philip Pope.  A confidential informant[1] ("CI") told Pope and Watkins that he suspected Collins was involved in the drug trade, and Reynolds, Pope, and Watkins then organized a "sting" in which the CI would purchase crack cocaine while wearing surveillance equipment that allowed the officers to video the transaction.  The CI made two drug purchases in Yazoo City on February 16, 2007 and identified the man who sold him the drugs in both transactions as Collins.  Not long thereafter, Pope obtained a copy of Collins's driver's license and Pope and Watkins compared it to a "still-shot" from the video of the transactions.  Based on their review of the photographs, Pope and Watkins both identified Collins as the man who sold crack cocaine to the CI on February 16.  Citing this evidence, Watkins and Pope then appeared before Yazoo County Justice Court Judge Pam May on April 24, 2007 and obtained an arrest warrant for Collins.  Watkins and others then arrested Collins that same day.  On May 18, 2007, the CI signed an Affidavit of Identification identifying Collins as the man who sold him the illegal drugs on February 16.  On May

---

[1]The confidential informant's name has since been revealed, but, in an abundance of caution, the Court will not use that name here.

25, 2007, the two state drug charges against Collins were dismissed. Months later, on December 5, 2007, a federal indictment was returned charging Collins with the sale of crack cocaine based on the two February 16 transactions with the CI. Collins was then arrested a second time. The federal charges were later dismissed on March 11, 2008. Collins now asserts claims against Watkins, Reynolds and Pope, the three MBN officers who were involved in his arrest, and against Marshall Fisher, the Director of the MBN. The gravamen of Collins's claims is that he was not the man on the video who sold crack cocaine to the CI and that the Defendants arrested the wrong man.

## II.  PROCEDURAL HISTORY

Collins commenced this action on April 17, 2008 in the Circuit Court of Yazoo County. On May 21, 2008, the Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(b) and asserted the Court's jurisdiction under 28 U.S.C. § 1331. Collins asserts three federal claims under 42 U.S.C. § 1983: (1) unreasonable seizure pursuant to the Fourth and Fourteenth Amendments; (2) violation of liberty interest under the Fourth, Fifth, Ninth, and Fourteenth Amendments; and (3) violation of right to privacy under the Fourth, Ninth, and Fourteenth Amendments. Under Mississippi law, Collins asserts six additional claims: (1) false arrest; (2) false imprisonment; (3)

intentional infliction of emotional distress; (4) violation of Article 3, § 23 of the Mississippi Constitution; (5) violation of Article 3, §§ 14 and 32 of the Mississippi Constitution; and (6) violation of Article 3 § 13 of the Mississippi Constitution.

The Defendants have moved for summary judgment as to all claims, asserting various federal and state law immunities. The Court held a three-day evidentiary hearing in order to develop the record on the facts surrounding Collins's arrest and determine whether the claimed immunities were applicable.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict

4

for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The non-movant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

## IV.   ANALYSIS

1.   _Federal Claims Under 42 U.S.C. § 1983._

  a.   _Individual vs. Official Capacity._

  A plaintiff in a § 1983 action may sue a natural person in his individual capacity, his official capacity, or both.   Senu-Oke v. Jackson State Univ., 521 F.Supp.2d 551, 556 (S.D. Miss. 2007).   Both parties agree that Collins asserts claims against the Defendants in their official capacities but the Defendants argue that Collins has not asserted any individual capacity claims.   Collins's claims under 42 U.S.C. § 1983 against The Defendants in their official capacities are not actionable.   In the context of a § 1983 claim, a suit against a state official in his or her official capacity is not a suit against the official but is a suit against the official's "office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); see also Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citations omitted).   Accordingly, Collins's claims against the Defendants as officers of the MBN are treated as claims against the MBN.

  The Civil Rights Act creates liability only for "persons." 42 U.S.C. § 1983.   A State is not a "person" within the meaning of § 1983 and thus a § 1983 claim does not lie against a State.

6

Will, 491 U.S. at 71 (1989).   MBN is an arm of the State of Mississippi.   Campbell v. Corinth Police Dep't., 2008 WL 623854 (N.D. Miss. 2008); Stevens v. City of Jackson, 2010 WL 1329090 (S.D. Miss. 2010).  For this reason, Collins's claims against the MBN are claims against the State of Mississippi which are not actionable under § 1983.   The Defendants' Motion for Summary Judgment is granted as to Collins's § 1983 claims against the Defendants in their official capacities.[2]

The Defendants contend that Collins has not asserted claims against them in their individual capacities.  The Complaint's caption names "Marshall Fisher, as Director of the Mississippi Bureau of Narcotics, and Kyle Reynolds, Phillip Pope and Willie Watkins, as Agents/Employees of the Mississippi Bureau of Narcotics." [Docket entry no. 1.]   At paragraph 18 of the Complaint, Collins alleges that the Defendants "while acting under color of law and in their official capacity as officers of the law in the employ of the Mississippi Bureau of Narcotics" violated his civil rights. At paragraph 31 of the Complaint,

_____

[2] The Defendants also argue that Collins's § 1983 official capacity claims should be dismissed because they are immune from liability under the Eleventh Amendment.  Because these claims are otherwise not actionable and the Eleventh Amendment does not bar claims against persons acting in their individual capacity, e.g., Floyd v. City of Kenner, 351 Fed.Appx. 890, 893 (5th Cir. 2009), the Court need not reach the Eleventh Amendment immunity issue here.

Collins states that he is seeking "compensatory damages from defendants Pope, Reynolds and Watkins, jointly and severally, in their official capacities, in a reasonable amount." Collins, without citing any authority, argues that though the Complaint twice recites the phrase "official capacity," his intent was to sue the Defendants while they were acting "under color of state law," as evidenced by the fact that the Defendants were referenced individually in the section of the Complaint titled "parties to the suit" and because specific allegations about the individual defendants are made throughout the complaint. [Docket entry no. 32 at 9.] Collins does not directly state in his summary judgment papers or elsewhere that he intended to sue the Defendants in their individual capacities.

Under established Fifth Circuit precedent, the failure to allege a defendant's capacity in the complaint is merely a "formal error and not a fatal defect." Parker v. Graves, 479 F.2d 335, 336 (5th Cir. 1973). Instead, the Court will look to the "substance of the claims, the relief sought, and the course of proceedings to determine in which capacity the defendant is sued." Senu-Oke, 521 F.Supp.2d at 556. This is not a case where the plaintiff has failed to allege a defendant's capacity in the Complaint; Collins specifically used the phrase "official capacity" twice and nowhere pled the words "individual capacity."

8

In Holden v. Knight, the United States District Court for the Eastern District of Louisiana held that the plaintiff had asserted only official capacity claims against two defendants, despite that the plaintiff referred to each defendant's individual actions and sought punitive damages that are not recoverable from a governmental entity.   2003 WL 22902625 (E.D. La. Dec. 8, 2003).   In so holding, the Court emphasized the salient fact that the plaintiff had used the phrase "official capacities" in the complaint and had failed to specify that he sought damages directly from the two defendants.   Id.   See also Hopkins v. Gusman, 2007 WL 2407247 (E.D. La. 2007) (holding the Court did not need to look beyond the complaint to determine that claims against defendant "in his capacity as Secretary of the Louisiana Department of Agriculture" were official, not individual, capacity claims).   Likewise, this Court finds that Collins's twice invoking the phrase "official capacity" in the Complaint, without ever using the phrase "individual capacity," is determinative here and that Collins asserts only claims against the Defendants in their official capacities.

The Court will nonetheless address the merits of Collins's § 1983 individual capacity claims which are for unlawful seizure; violation of liberty interest; violation of the right to privacy; and failure to train and supervise against Defendant Fisher.

b.  *Qualified Immunity*.

The Defendants assert the defense of qualified immunity as to Collins's 1983 individual capacity claims.  Collins argues that the Defendants have waived the defense by failing to pursue it until their motion to dismiss and motion for summary judgment, filed more than two years after the commencement of this suit. The Defendants did assert the qualified immunity defense in their Answer, however.

Because qualified immunity "is an immunity from suit rather than a mere defense to liability . . . [the Supreme Court] repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991).  Further, the "driving force" behind qualified immunity is the desire to resolve unsubstantial claims against government officials prior to reaching the discovery phase.  <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009). Nonetheless, the Fifth Circuit has refused to take a "formalistic approach" to the assertion of qualified immunity and will permit the late assertion of the defense in certain contexts.  <u>Pasco v. Knoblauch</u>, 566 F.3d 572, 577-78 (5th Cir. 2009) (permitting defendants to assert qualified immunity 52 months after the complaint was filed and despite not having raised it in their answer because doing so would not prejudice the plaintiff and

10

discovery was not yet complete).  Here, the Defendants invoked the affirmative defense of qualified immunity multiple times in their Answer.  Moreover, Collins has not put forth any evidence that he was prejudiced by the delay in asserting the defense. Indeed, because Collins had notice from the Answer that the Defendants intended to assert the defense, it is hard to imagine how he could have been prejudiced.  Even assuming Collins could have been prejudiced by the inability to discover the facts underlying the defense now that the discovery deadline has passed, the Court recently held an extensive hearing to develop the facts relevant to the qualified immunity defense.  Any potential prejudice has been remedied by the evidentiary hearing. Accordingly, under the circumstances of this particular litigation, the Defendants have not waived the defense of qualified immunity.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Thus, qualified immunity balances the need to hold irresponsible government officials accountable for their actions with the need "to shield officials from harassment, distraction, and liability

when they perform their duties reasonably." <u>Pearson</u>, 129 S. Ct.
at 815.  In shielding government officials, "all but the plainly
incompetent and those who knowingly break the law" are protected.
<u>Malloy v. Briggs</u>, 475 U.S. 335, 341 (1986).  Thus, a public
official is entitled to qualified immunity unless a plaintiff
demonstrates: (1) a violation of a constitutional right; and (2)
that the right at issue was clearly established at the time of
the violation.  <u>Pearson</u>, 129 S. Ct. at 815-816.

     c.  *Section 1983 Claim for Unreasonable Seizure Under
       the Fourth and Fourteenth Amendments*.

Collins contends that his arrest violated the Fourth and
Fourteenth Amendments because the Defendants did not have
probable cause to arrest him.  The Fourth Amendment protects
individuals from unreasonable search and seizure.  U.S. Const.
amend IV.  An arrest is considered reasonable under the Fourth
Amendment if made with "probable cause." <u>Brown v. Lyford</u>, 243
F.3d 185, 189 (5th Cir. 2001) (holding plaintiff must demonstrate
that he was arrested without probable cause to prove an unlawful
arrest claim).  Probable cause depends on the circumstances of an
individual case and exists when the arresting officer has
trustworthy knowledge that would allow a reasonable man to
determine that the arrested person was committing a crime. <u>U.S.
v. Lowery</u>, 436 F.2d 1171, 1174 (5th Cir. 1970) (citing <u>Craper v.</u>

U.S., 358 U.S. 307 (1959) and Carroll v. U.S., 267 U.S. 132, 162 (1925)).

Collins contends in his summary judgment papers that the Defendants did not have probable cause to arrest him because: prosecutors were not consulted before the two arrest warrants were submitted to the Justice Court Judge Pam May; the warrants lacked adequate "facts and circumstances;" the warrants were based on false information by the Defendants; Collins was not in fact the person who made the drug sales that were the basis for the warrants; there was no independent source of information for the issuance of the warrant other than the information from the confidential informant who was known to be unreliable; there was no indication that the lab report for the purchased drugs was attached to the warrant, despite that the Defendants had a lab report available to them at the time the warrant was issued; and the photo identification of the suspect by the confidential informant was completed after the arrest warrants were issued.

Even if Collins is correct that he was arrested without probable cause, the Defendants obtained a warrant before doing so and arrests made under a properly issued warrant are not unconstitutional. Smith v. Gonzales, 670 F.2d 522, 526 (5th Cir. 1982). "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a

13

magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." Taylor v. Gregg, 36 F.3d 453, 456 (5th Cir. 1994) (citations omitted).  The causal chain is broken even if the officer acts with malice in procuring the warrant, as long as relevant information is not withheld and no "misdirection" of the Magistrate Judge occurs.  Hand v. Gary, 838 F.2d 1420, 1428 (5th Cir. 1988).

At the evidentiary hearing, Pope testified that the CI upon whom the Defendants relied in this case had led to successful prosecutions in the past.  Pope and Watkins both testified that they reviewed the videos of the two February 16, 2007, drug sales and then compared those videos and still photographs from them to Collins's driver's license photograph.  After doing so, both Officers made a positive identification of Collins as the man selling drugs in the videos.  Pope and Watkins then sought and were issued an arrest warrant from Justice Court Judge Pam May, after which Watkins and other officers arrested Collins.

The District Attorney for Yazoo County at the time Collins was arrested testified that he had told at least one MBN agent - but not any of the Defendants - that the CI whom the Defendants used in this case was not trustworthy.  Nonetheless, Defendants Reynolds, Pope, and Watkins each testified that he was never told

14

by the Yazoo County District Attorney or anyone else not to use this CI or that this CI was not trustworthy.

Collins presented evidence that the person who sold the crack cocaine to the CI was not Collins but was instead another man, whom Collins identified by name (but whom the Court will not name), and that the Defendants ignored several indications that this other man was the actual drug dealer in the February 16 videos.   For example, Collins presented evidence that a woman named Florida Robinson, who was recorded on one of the February 16 videos riding in the same car with the drug dealer, identified someone other than Collins as the actual drug dealer before Collins's arrest on state charges in April 2007.   Officer Watkins testified that Robinson told him that she was not certain of the man's identity and that he could have been one of several people. Officer Watkins also testified that Robinson changed her story multiple times and was not credible, though he admitted that she never named Courtney Collins as the man in the video with her.[3]

---

[3]At the evidentiary hearing, Collins's attorneys extensively questioned Defendants Watkins and Reynolds about a recorded interview with Robinson which took place in August 2007, after Collins's first arrest for state charges in April 2007.  To the extent that Robinson identified someone other than Collins as the man in the video in August 2007, that is irrelevant to claims arising out of Collins's April 2007 arrest and Collins's Complaint does not appear to assert claims based on his December 2007 arrest following an indictment on federal drug charges. Even if Collins did assert claims arising out of the December 2007 arrest, the Court would reach the same result because

Collins presented evidence that the telephone number at which the CI called "Collins" was registered to the step-father of the person whom Collins contends was the actual drug dealer. Officer Pope testified that drug dealers rarely use telephones registered in their own names and thus the MBN Officers did not place much weight on the fact that the telephone used to contact "Collins" was not registered to him. Collins further presented evidence that the Defendants would have discovered that Collins was not the man on the video if they had asked local law enforcement in Yazoo City who knew Collins to review the video or if the Defendants had subpoenaed records from Collins's employer which show that he was at work at the time of the alleged drug sale. The Defendants testified that because the Yazoo County Sheriff's Department had sometimes leaked information to potential suspects, the MBN avoided revealing names of suspects to local Sheriff's deputies where they could make their own independent identification, as they believed they had done sufficiently here.

_____

Collins presented no evidence that the Defendants withheld evidence from the federal grand jury and thus Collins's arrest pursuant to the federal indictment was not unlawful.  Taylor, 36 F.3d at 456.  Indeed, though Collins places much emphasis on Robinson's testimony as exculpatory, Robinson testified before the federal grand jury and it still returned an indictment against Collins.

Defendants Reynolds, Pope, and Watkins each testified that he still believes that the person on the videos selling crack cocaine is Collins.  Collins was present at the evidentiary hearing and, in an effort to determine whether the testimony of the agents on this point should be discredited, the Court compared the still photographs taken from the videos to Collins. Because there is an obvious resemblance between the individual shown in the photographs and Collins, the Defendants' testimony was not impugned.  The Court emphasizes that the purpose of this comparison was not to suggest that Collins is the individual shown on the video.  The Court draws no such conclusion.  Rather, the purpose was to determine whether the Defendants' testimony that they believed that Collins was the person in the videos was credible.  Defendant Pope testified that the state court charges against Collins were dismissed because Collins's father is a county supervisor in Yazoo County and the MBN did not believe that Collins would ever be prosecuted, given his father's position of influence.

After an exhaustive hearing, Collins presented no evidence that any of the Defendants withheld relevant information or otherwise "misdirected" the Justice Court Judge in obtaining the arrest warrants for Collins.  The Defendants testified credibly that they still believe the man on the videos was Collins.

17

Further, Collins presented no evidence that any of the Defendants knew when the warrants were obtained that the Yazoo County District Attorney had ever questioned the reliability of the CI or directed the MBN not to rely on the CI.  Though Florida Robinson did not identify Collins as the man in the car with her on the February 16, 2007 video, Officer Watkins testified that she was not credible and that she mentioned several people who may have been the actual drug dealer.  On balance, this information was not exculpatory of Collins.  To the extent that further investigation of Collins's work records or asking local law enforcement authorities to review the video might have exonerated Collins, "'the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause.'" Quinn v. Roach, 326 Fed. Appx. 280, 287 (5th Cir. 2009) (quoting Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000)).

In short, because the undisputed evidence establishes that the Defendants did not withhold relevant evidence from the Justice Court Judge, they obtained a valid warrant to arrest Collins and the chain of causation was broken.  Summary judgment is therefore granted in favor of the Defendants as to the § 1983 claim for unreasonable seizure.  (The Court need not reach the second prong of qualified immunity — whether the Defendants

violated a clearly established right — because there was no constitutional violation.)

d. *Section 1983 Claim for Violation of Liberty Interest.*

Based on the same facts which form the basis for his unlawful seizure claim, Collins asserts claims under the Fourth, Fifth, Ninth, and Fourteenth amendments for violation of his "liberty interest." Collins has no Fifth Amendment claim against the MBN Defendants, who are State actors, because the Fifth Amendment applies only to federal actors. Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1994) (citing Richard v. Hinson, 70 F.3d 415, 416 (5th Cir. 1995)) (dismissing § 1983 claim for Fifth Amendment violation against city police officers premised on arrest without probable cause). Likewise, Collins's claim premised on the Ninth Amendment must fail because that Amendment does not specify any substantive constitutional rights and therefore cannot form the basis for a § 1983 claim. Canton Branch of NAACP v. Runnels, 617 F.Supp. 607, 609 n.3 (S.D. Miss. 1985).

To the extent that Collins's brings his liberty interest claim under the Fourteenth Amendment, it derives from his alleged arrest and detention without probable cause and is therefore more properly considered under the specific Constitutional protections of the Fourth Amendment. Reynolds v. New Orleans City, 272

19

Fed.Appx. 331, 338 (5th Cir. 2008) (dismissing claims for arrest without probable cause premised on Fourteenth Amendment due process) (citing Albright v. Oliver, 510 U.S. 266, 273 (1994), other citations omitted).   To the extent that Collins asserts a due process claim for defamation against the Defendants because Collins was suspended from his job after being arrested, Collins cannot state a claim because he has not shown that his arrest was "false."  Lyle v. Dedeaux, 39 F.3d 320 (5th Cir. 1994) (affirming summary judgment for defendant police officers against § 1983 defamation claim because plaintiff could not show "falsity" of any statement by the Defendants based on arrest for items lawfully seized from plaintiff).   Instead, as discussed above, the Court finds that Collins was arrested pursuant to a validly obtained warrant and his arrest was therefore lawful. Accordingly, summary judgment is granted for the Defendants as to Collins's claim for violation of his "liberty interest."

e.  *Section 1983 Claim for Violation of Right to Privacy*.

Collins also asserts a claim under the Fourth, Ninth, and Fourteenth Amendments because the alleged false arrest violated his right to privacy.   To the extent that Collins's right to privacy claim is based upon an implicit allegation that the Defendants disclosed the fact of his arrest (Collins does not make such an allegation but does note that his arrest was the

20

subject of newspaper articles), Collins has no right to privacy regarding his arrest record or the police reports surrounding his arrest. Nilson v. Layton City, 45 F.3d 369, 372 (10th Cir. 1995) (citing Paul v. Davis, 424 U.S. 693 (1976) and Scheetz v. The Morning Call, Inc., 946 F.2d 202, 207 (3d Cir. 1991)). To the extent Collins's claim for deprivation of the right to privacy is based solely on the absence of probable cause to arrest him, that claim is dismissed for the reasons discussed above. Collins also cites the Ninth Amendment in alleging his right to privacy claim but, again, that Amendment does not specify any substantive constitutional rights and therefore cannot form the basis for a § 1983 claim, whether for violation of the right to privacy or for something else. Canton Branch of NAACP, 617 F.Supp. at 609 n.3. In short, summary judgment is granted for the Defendants as to Collins's constitutional claims for violation of his right to privacy.

f. *Section 1983 Claim for Failure to Train and Supervise*.

Collins also asserts a failure to train and supervise claim against Defendant Fisher, the Director of the MBN, who was not personally involved in any of the events surrounding Collins's arrest. A supervisor, like Defendant Fisher, is not liable for the unconstitutional acts of his subordinates on a theory of vicarious liability. Thompkins v. Belt, 828 F.2d 298, 303 (5th

21

Cir. 1987).  Instead, a supervisor who is not personally involved in the alleged constitutional violation may be liable only if there is a "sufficient causal connection between the supervisor's wrongful act and the constitutional violation." <u>Id.</u> at 304. That causal connection exists "even without overt personal participation if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." <u>Id.</u>  "Usually, a failure to supervise gives rise to 1983 liability only when there is a history of widespread abuse" such that "knowledge may be imputed to the supervisory official who can be found to have caused the violation by the failure to prevent it." <u>Dilworth v. Box</u>, 53 F.3d 1281 (5th Cir. 1995) (citing <u>Bowen v. Watkins</u>, 669 F.2d 979, 988 (5th Cir. 1982)).  As discussed above, the Court holds that Defendants Watkins, Pope, and Reynolds did not violate the Constitution in their arrest of Collins and thus Collins cannot maintain a failure to supervise claim against Fisher based on that arrest.  But even if that were not the case, Collins has neither alleged facts nor presented evidence to suggest that there is any causal connection between Director Fisher and the would-be violation, much less any widespread history of abuse at

MBN.    Accordingly,   the   Court   grants   summary   judgment   for
Defendant Fisher as to all claims against him.

2.   *State Law Claims*.

Collins   asserts   claims   under   Mississippi   state   law   against
the Defendants for false arrest, false imprisonment, intentional
infliction   of   emotional   distress,   and   for   violation   of   several
articles   of   the   Mississippi   Constitution   of   1890.    The   Defendants
assert   that   they   are   entitled   to   immunity   as   to   all   of   these
claims   under   the   Mississippi   Tort   Claims   Act   ("MTCA")   because
they acted within the scope of their duties in arresting Collins.
The MTCA provides that:

> (1)  a  governmental  entity  and  its
> employees  acting  within  the  course  and  scope
> of  their  employment  or  duties  shall  not  be
> liable for any claim ...

> (c)  Arising  out  of  any  act  or
> omission  of  an  employee  of  a
> governmental  entity  engaged  in  the
> performance  or  execution  of  duties  or
> activities  relating  to  police  or  fire
> protection  unless  the  employee  acted  in
> reckless  disregard  of  the  safety  and
> well-being  of  any  person  not  engaged  in
> criminal  activity  at  the  time  of
> injury....

Miss   Code.   Ann.   §   11-46-9.    Collins   counters   that   the
Defendants   acted   with   "reckless   disregard"   and   thus   are   not
immune   under   the   MTCA.    "'Reckless   disregard'"   has   been   described
by  the  Mississippi  Supreme  Court  as  a  'higher  standard  than  gross

23

negligence [that] embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.'" City of Jackson v. Powell, 917 So.2d 59, 71 (Miss. 2005) (quoting Collins v. Tallahatchie County, 876 So.2d 284, 287 (Miss. 2004)). In other words, police officers are immune for merely negligent acts. Turner v. Ruleville, 735 So.2d 226, 229 (Miss. 1999) ("In the context of the statute, reckless must connote wanton or willful because immunity lies for negligence.").

Based on the undisputed facts developed at the evidentiary hearing, the Court holds that the Defendants were at most negligent in their arrest of Collins and thus that they are entitled to immunity under the MTCA. In his summary judgment papers and at the evidentiary hearing, Collins proposed numerous avenues of investigation that might have alerted the Defendants to the fact that Collins was not the man on the videos selling crack cocaine to the CI. However, as discussed more fully above in the discussion of Collins's federal claims, Collins has submitted no evidence that any of the Defendants ignored information that they knew to be exculpatory of Collins before they arrested him.

Indeed, there is conflicting evidence about whether Collins actually was the man on the videos. Collins maintains that he

24

was not but Defendants Watkins, Pope, and Reynolds each testified that he still believes that Collins was the man on the videos. Indeed, no one else has been indicted for the February 16, 2007 drug sales.  In short, there is at least a disputed fact about whether the Defendants arrested the right man.  But even if it were true beyond doubt that Collins was *not* the man on the videos, the Defendants were at most negligent in their arrest of Collins.  They did not act with reckless disregard.[4]

Though not cited by either party, the facts here are similar to those in City of Greenville v. Jones, 925 So.2d 106 (Miss. 2006) and Mitchell v. City of Jackson, 481 F.Supp.2d 586 (S.D. Miss. 2006), in both of which defendant police officers were held to be immune under the MTCA despite their arrest of individuals who were ultimately not indicted for the crime for which they were arrested.  In Jones, officers of the Greenville Police Department obtained a warrant pursuant to which they arrested the plaintiff, Jones, for falsely reporting that explosives had been placed in the Police Department and at the local high school. Jones was identified by tracing the cellular phone number that had made the calls reporting the explosives.  Upon investigation, it was revealed that someone at the cellular telephone company

---

[4]It should be noted that the Court is not finding that the Defendants were negligent.

had transposed the number given to him by the investigating officer and thus the offending calls did not come from Jones's telephone number. Jones argued that the defendants had acted with reckless disregard because they did not notice that the telephone log they received listed Jones's correct number (which was not the number that made the calls reporting the explosives) on most, but not all, of its pages. Jones further argued that the officers had acted with reckless disregard by failing to investigate several avenues which would have revealed that Jones did not place the offending calls. The Mississippi Supreme Court reversed the trial court's finding that the Greenville Police Department had acted with reckless disregard because, in its view, the officers had merely been negligent. Jones, 925 So.2d at 121.

Similarly, in Mitchell, officers of the Jackson Police Department arrested Mitchell and another man, Weghorst, pursuant to a warrant for the murder of a third man, Williams, but the men were ultimately released without being charged with the murder. Williams, Mitchell, and Weghorst had been out at a bar together when they had decided to go to another bar; Williams drove Mitchell's car because Mitchell was too intoxicated to drive and Mitchell rode with Weghorst. Id. With Williams at the wheel, Mitchell's car apparently was then set on fire using some type of

26

accelerant and Williams died as a result of his burns.  Mitchell,
481 F.Supp.2d at 578.  When the police arrived at the scene of
the burning vehicle, Mitchell and Weghorst were present and an
arson dog alerted to both of them for an accelerant.  Id.
Officers then interviewed a neighbor who had reported the burning
car and she told Police that she had seen two men standing over
the vehicle about 1.5 hours before she reported the car on fire
and that Mitchell looked "just like the guy" she had seen.  Id.
Based on this information, the officers obtained warrants for the
arrest of both Mitchell and Weghorst.

    In their suit against the City of Jackson, Mitchell and
Weghorst contended that the Police Department should have
conducted a more thorough investigation by interviewing alibi
witnesses who would have revealed that Mitchell and Weghorst were
at a bar when the fire started; by conducting a chemical analysis
of their clothing which would have revealed that there were no
accelerants present; and by interviewing the neighbor witness
more fully which would have revealed that she was not reliable.
Id. at 590-91. The Mississippi Supreme Court disagreed and held
that the defendants had not acted with reckless disregard because
even though reasonably prudent officers might differ over whether
there had been probable cause to arrest Mitchell and Weghorst,
"the seemingly trustworthy information reasonably available to

them at the time of the arrest would have warranted a prudent man in believing that these plaintiffs had committed the murder." Id. at 591.   Cf. Foster v. Noel, 715 So.2d 174 (Miss. 1998) (holding defendant police officers had acted with reckless disregard where they arrested female for shoplifting after seemingly ignoring store manager's account that he had seen two men steal the merchandise).   Likewise, the Defendants here are immune under the MTCA as to the State law claims against them because they did not act with reckless disregard.   Summary judgment is granted for the Defendants as to the State law claims.

### IV.  Conclusion and Order

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Defendants' Motion for Summary Judgment [docket entry no. 27] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Defendants' Motion to Dismiss [docket entry no. 29] is **MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike [docket entry no. 40] is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendants' oral objection to Plaintiff's Submission of an Expert Affidavit with its summary judgment papers is **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiff's Petition to Disclose a Grand Jury Matter [docket entry no. 46] is **MOOT**.

**SO ORDERED** this the 18th day of October 2010.


    s/ David Bramlette
**UNITED STATES DISTRICT COURT**